## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIESHA TABON | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 10-2781 |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM | : | |
| and | : | |
| PRESBYTERIAN MEDICAL CENTER OF | : | |
| THE UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM, d/b/a PENN | : | |
| PRESBYTERIAN MEDICAL CENTER | : | |
| | : | |
| Defendants. | : | |

### ORDER

AND NOW, this _____ day of _____, 2012, it is hereby **ORDERED** and

**DECREED** that Plaintiff's Motion seeking an adverse inference / spoliation jury instruction as a

sanction for spoliation due to Defendants failing to preserve critical evidence is **GRANTED**.


BY THE COURT


_____
The Hon. Lynne A. Sitarski, U.S.M.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIESHA TABON | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 10-2781 |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM | : | |
| and | : | |
| PRESBYTERIAN MEDICAL CENTER OF | : | |
| THE UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM, d/b/a PENN | : | |
| PRESBYTERIAN MEDICAL CENTER | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION

Plaintiff hereby respectfully moves this Court for an Order requiring an adverse jury instruction for spoliation by Defendants for the reasons set forth in Plaintiff's accompanying Memorandum, attached hereto and incorporated herein by reference.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s Ari R. Karpf*
Ari R. Karpf
Attorney for Plaintiff
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: May 11, 2012

2

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIESHA TABON | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 10-2781 |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM | : | |
| and | : | |
| PRESBYTERIAN MEDICAL CENTER OF | : | |
| THE UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM, d/b/a PENN | : | |
| PRESBYTERIAN MEDICAL CENTER | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT
### OF MOTION FOR SANCTIONS FOR SPOLIATION

Plaintiff, by and through her undersigned counsel, hereby states as follow in support of her Motion.

### I.     Factual Underpinnings & Bases for Motion

Plaintiff properly raises a request at this time for a spoliation jury instruction because discovery is closed and an adverse jury instruction is an evidentiary ruling. *See. e.g. Amfosakyi v. Frito Lay*, WL 6099567 (M.D. P.a 2011), citing, *Ward v. Lamanna,* 334 F.App'x 487, 492 (3d Cir.2009).[1]

In the instant case, Plaintiff raises three (3) specific categories/instances of spoliation:

---

[1] Plaintiff's undersigned counsel has been involved with the litigation of 515 federal cases in the Eastern District of Pennsylvania as of even date (based upon a review of Pacer). Due to the egregiousness of Defendants' actions, this is the first Motion Plaintiff's undersigned counsel *has ever filed* for spoliation sanctions or an adverse jury instruction for same.

**(1) Defendants' management testified they were unable to produce the investigation file concerning Plaintiff's _alleged_ performance problems resulting in her termination which consisted of witness statements, management notes and patient documents.**

As this Court explained in its Memorandum denying Defendants' Motion for Summary Judgment, there is no record of Plaintiff ever being disciplined for a performance concern in advance of her termination. The only documentary evidence of any _alleged_ performance concern was destroyed or lost by Defendant.

Carter (the manager whom Plaintiff contends discriminated against her) testified that as part of her investigation into incidents of alleged documentation errors *during Plaintiff's last several weeks of employment*, she interviewed nurses and the doctors. *See* 9/28/11 Deposition of Carter, at pp. 80-81, attached hereto as "Exhibit A." In total, Carter explained that as part of her investigation, she interviewed approximately 7 medical staff (nurses and doctors). *See* 1/19/12 Deposition of Carter, at pp. 34-35, attached hereto as "Exhibit B."

Carter testified ***she took notes of her investigation and obtained written statements from the staff***. Exhibit A at pp. 83-84. Carter could not identify what happened with her investigation notes/summary or why they were not provided in this case. *Id.* at p. 84; *See also* Exhibit B, at pp. 97-98 (Carter explaining she doesn't know why her investigation file was not produced in litigation); Exhibit B, at p. 89 (I don't know where my notes are).

Carter's summary confirmation of Defendants failure to preserve ***a single investigatory document*** concerning Ms. Tabon can be summarily understood by reference to 2 pages of conclusive testimony by her. Beginning on page 94 of Exhibit B, the following exchange took place during Carter's deposition:

> Q. Now, you would agree with me sitting here today, Penn did not retain one document relating to this investigation of Ms. Esther Williams?

4

A. I agree.

Q. I'm sorry?

A. You're asking me what? I'm sorry.

A. What are you asking me?

Q. You would agree with me sitting here today that Penn did not retain one document relating to your investigation of this incident?

Q. Correct?

A. I don't know where it is.

* * *

Q. When you did your investigation, you turned over all of your investigation statements that you received from all these witnesses to HR, I believe you said, right?

A. That's correct.

Q. In reviewing documents for your deposition, you didn't see any, did you?

A. No.

Q. So just so I can understand you correctly, you stated that you received statements from witnesses that you interviewed, correct?

A. Yes.

Q. Whether you kept them or not, Penn should have these statements that you turned over to them, correct?

A. Correct.

Q. Do you have any reasons why I was not provided with any of your investigation documents regarding this incident?

A. No.

*See* Exhibit B, at pp. 94-95.

It is not surprising that Defendant failed to produce or maintain any investigation documents about or concerning Tabon because it can reasonably be inferred they were helpful to her. For example, 2 colleagues gave Tabon voluntarily copies of statements they provided to management which she in turn kept and provided during the instant litigation *to Defendant*. *See e.g.* Collective Exhibit "C" (2 nursing staff and Tabon herself giving statements that Tabon properly informed unit staff she was taking a break and that Tabon assisted as best she could upon learning of the code during her break).

In the following exchange with Defendants' director of nursing, Barbara Anderson, it was confirmed that upper level management cannot determine what happened to the investigation file concerning Plaintiff:

> Q. Could you please tell me why, during the course of this whole litigation, we were not provided with one document reflecting any investigation that was done by Ms. Carter?
>
> A. I can't.
>
> Q. You're saying she did do an investigation?
>
> A. She absolutely did.
>
> Q. You have no explanation as to why we were not provided with any documents supporting her investigation in terminating Ms. Tabon?
>
> A. I do not.
>
> *See* Deposition of Barbra Anderson Deposition, at pp. 32-33, attached hereto as "Exhibit D."

**(2)  Defendants failed to maintain <u>or</u> produce the original medical documents for Catherine McNeil, as the authenticity of these documents are in dispute.**

One reason Defendants proffer for terminating Plaintiff was her failure to properly document tube feeding of this particular patient on September 15, 2009. During discovery, Plaintiff was presented with McNeil's 9/15/09 medical chart (bate-stamped by Defendant as UP001042), attached hereto as "Exhibit E." Plaintiff specifically testified the document was altered from what she originally wrote. *See* Deposition of Tabon, at pp. 124-125, attached hereto as "Exhibit F" (Tabon explaining that her notation of giving tube feeding of 40 ccs was mostly erased).  A review of Exhibit E gives the clear appearance of an erasure in the row "2000" (military time for 8pm) in the middle of the page.  All that is left in the chart is a partial mark of "<" which was erased from being originally "40."[2]

Pennsylvania State Law, particularly 49 Pa. Code § 16.95, requires medical records to be retained for 7 years by medical providers / health care facilities. Defendants' director of nursing, Barbara Anderson, testified *that Defendants are not only required to keep original medical charts but that they do keep them in an offsite storage.*  Exhibit D, at pp. 31-32.

Plaintiff's counsel adamantly demanded that the originals be produced for inspection, Defendants' counsel agreed to produce the originals for inspection, and then - at the last minute - canceled saying Defendants could not locate the original(s).  A glimpse (not including all verbal conversations) of the timeline is below:

> 9/26/11 - Plaintiff's counsel e-mails Defendants' counsel to make the originals medical charts available for inspection with Plaintiff for documents wherein authenticity is at issue. Exhibit G.

> 9/27/11 - E-mail from Defendant's counsel agreeing to cancel depositions to schedule time for review of originals. *See* Exhibit G.

---

[2] This Chart was provided to the Court for ease of review in a blow up at Plaintiff's Summary Judgment "Exhibit C."

10/12/11 - Defendants' counsel requested that to review documents, Plaintiff's counsel issue a subpoena. Plaintiff's counsel issued a subpoena for review of original medical documents. *See* "Exhibit H."

10/13/11 - E-mail from Defendant's counsel coordinating to schedule Plaintiff's counsel for a review of originals of the medical documents wherein authenticity is in dispute. *See* "Exhibit I."

11/15/11 - E-mail **confirming** that Plaintiff and her counsel can appear at Defendants in-person for a review of Defendants' original medical charts on 11/23/11 at 9:30 a.m. *See* "Exhibit J."

11/22/11 - Less than 24 hours prior to review of originals, Defendants' counsel (Michael Galey), called at or around 3pm and informed Plaintiff's counsel (Amy Karpf) that Defendants did not retain any originals of the documents she wanted to review and canceled the in-person inspection.

During Carter's deposition, the following exchange took place:

> Q. Now, Penn's attorney, Mr. Galey, represented that there are no originals of any of these documents with regards to both patients' records, the flow sheet, the patient chart, the Sunrise report and that they all have been destroyed. You didn't keep any originals of these documents, did you?
>
> A. No.
>
> Exhibit B, at p. 151.

**(3) Defendants failed to provide documents or computer printouts <u>of comment sections</u> within Defendants' computer system (particularly, sunrise reports).**

Plaintiff disputes any assertion that she failed to document information, as she stated there is *a comment section* within Defendants' computer system. Plaintiff specifically documented her treatment of the 2 patients at issue in this case within Defendants' computer system despite Defendants identifying she failed to document 2 patient issues within her last several weeks of employment. On page 124 of her deposition (Exhibit F), Plaintiff expressly stated she documented information concerning the patients at issue (in her termination) in Defendants' Sunrise Computer System within the "comment section." When asked again about

8

patient information during her deposition, Plaintiff again explained to Defendants' counsel, "I said if you look in Sunrise, I've documented it in Sunrise." Exhibit F, at p. 131.

Defendants failed to present Plaintiff with any comment sections within the Sunrise Computer System that could have been printed, and Defendants have failed to produce any of this information despite numerous requests for same during discovery (only stating they did not retain them). To date, Plaintiff has never been provided with comment sections from the Sunrise System *for either of the 2 days she allegedly failed to document matters* within her last several weeks of employment.

### (4) Defendants Refused to Provide Even Plaintiff's Own Medical Leave Requests

Defendants' spoliation **has been so bold and blatant** in this case that Defendants did not even produce Plaintiff's medical leave request form(s) she submitted to Defendants. Plaintiff is the only party who produced Plaintiff's FMLA requests forms signed by Defendants' management because Defendant could not locate such documents. Defendants notably (as referenced in Plaintiff's Summary Judgment Motion) then amended Interrogatory Responses in this case from Plaintiff *never requesting medical leave* **to** Plaintiff *only requesting medical leave after learning she might be terminated*. It can only be construed that Defendants have acted with the utmost malice in this case. *See* Plaintiff's Summary Judgment Statement of Facts (outlining Defendants transition of defense after getting Plaintiff's written discovery production).[3]

---

[3] Plaintiff only seeks an adverse jury instruction for the first 3 issues raised, not this 4th issue, which is being raised as corroboration of Defendants' malicious intent.

## II.   Legal Argument

### (A) The Evidence and this Circuit's Jurisprudence Clearly Shows that Defendants Engaged in Spoliation.

Plaintiff is not raising some tangential issue about Defendant misplacing a particular irrelevant document. Defendants have failed to produce and retain the most critical documents underlying Plaintiff's case, *severely prejudicing Plaintiff.*

Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") in November of 2009 (within 1.5 months of her termination from Defendant) initiating a federal investigation of Defendants. *See* EEOC Charge, attached hereto as "Exhibit K." Plaintiff filed her lawsuit in June of 2010 (See Docket Entry # 1). Defendants exhibited gross neglect and willful disregard in this case.   Litigation (through 2 separate forums) has been pending for nearly 3 years, and only in November of 2011 does Defendant realize it doesn't have patient documents concerning treatment of 2 patients at issue - *indicating a clear disregard for any requirement to preserve documents and a lack of any meaningful litigation hold policy or procedure.* Defendants' gross neglect is further evidenced by Defendants having to request court permission to take Plaintiffs' deposition and to engage in further discovery previously forgotten before the discovery deadline elapsed.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.,* 348 F.Supp.2d 332, 335 (D.N.J.2004)." *Fortune v. Bitner.* No. 01–111, 2006 WL 839346, * 1 (M.D.Pa. March 29, 2006); *see Ogin v. Ahmed,* 563 F.Supp.2d. 539, 542 (M.D.Pa.2008).

"A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa.1994). Where evidence

is destroyed, sanctions may be appropriate, including the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the 'spoliation inference.' This inference permits the jury to assume that 'the destroyed evidence would have been unfavorable to the position of the offending party.' *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir.1994)." *Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D.Pa.1996)

"If a party has notice that evidence is relevant to an action, and either proceeds to destroy that evidence or allows it to be destroyed by failing to take reasonable precautions, common sense dictates that the party is more likely to have been threatened by that evidence." *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.* 348 F.Supp.2d 332, 338 (D.N.J.2004); *holding recognized by, Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc.*, 2008 WL 1995305, *10 (W.D.Pa. May 6, 2008); *Paris Business Products, Inc. v. Genisis Technologies, LLC*, 2007 WL 3125184, *3 (D.N.J. Oct. 24, 2007); *AMG Nat'l Trust Bank v. Ries*, 2011 WL 3099629, *5 (E.D.Pa. Jul. 22, 2011).

A spoliation inference should be imposed where: (1) the evidence in question was within the party's control; (2) there appears to have been actual suppression or withholding of the evidence; (3) the evidence in question was relevant to the claims or defenses; and (4) it was reasonably foreseeable that the evidence would be discoverable in litigation. *Mosaid*, 348 F.Supp.2d at 336.

There is no requirement that the spoliation be intentional; even "negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference." *Mosaid*, F.Supp.2d at at 338; *See also Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc.*, 2008 WL 1995305, *10 (W.D. Pa. May 6, 2008); *Paris Business Products, Inc. v. Genisis Technologies,*

*LLC,* 2007 WL 3125184, *3 (D.N.J. Oct. 24, 2007); *AMG Nat'l Trust Bank v. Ries,* 2011 WL 3099629, *5 (E.D. Pa. Jul. 22, 2011).

There is simply no doubt that the evidence was in Defendants' control, the evidence was not provided, and the evidence is critical factual discovery in the case that any Defendant would and should preserve. Defendant conclusively engaged in spoliation of the evidence, and although only negligence is sufficient, the acts appear willful (including erasures, deletions from a computer system, change of Interrogatory Responses when Plaintiff was able to produce relevant documents, and non-compliance with Pennsylvania record-keeping laws).

"The duty to preserve potentially relevant evidence is an affirmative obligation that a party may not shirk. When the duty to preserve is triggered, it cannot be a defense to a spoliation claim that the party inadvertently failed to place a "litigation hold" or "off switch" on its document retention policy to stop the destruction of that evidence." *Mosaid,* 348 F.Supp.2d at 339.

### *(B) Remedy Sought by Plaintiff*

In the instant case, the only remedy Plaintiff is seeking *is an adverse inference / spoliation jury instruction due to Defendants' clear and admitted spoliation of critical evidence* that goes to the very heart of the only factual dispute in this case.

The spoliation inference is an adverse inference that permits a jury to infer that "destroyed evidence might or would have been unfavorable to the position of the offending party." *Scott,* 196 F.R.D. at 248. This inference is predicated upon the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him. *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir.1995).

An adverse inference, or the spoliation inference, *is regarded as a "far lesser sanction," and is intended to level the playing field between the parties*. *Mosaid,* 348 F.Supp.2d at 335, 338. Plaintiff is not taking a more typical position and asking this Court to preclude Defendant from defending the case expecting the Court to make some sort of compromise. Plaintiff is simply asking at the outset for the most reasonable and least severe sanction that the Court can give Defendant for what appears to be objectively outrageous and egregious conduct.

When a party fails in obligations to preserve critical evidence (as in this case), has been on notice of such relevant evidence as litigation has been pending for nearly 3 years, and inexplicably fails to produce such evidence merely shrugging its shoulders, there exists spoliation. Courts don't hesitate in this Circuit under such circumstances to award severe sanctions or adverse inferences for such conduct. *See e.g. Jones v. PPG Industries, Inc.,* 393 Fed.Appx. 869 (3d Cir. 2010)(confirming that an adverse inference jury instruction was appropriate to be used by court when the defendant admitted to losing investigatory file); *Patel v. Havana Bar, Restaurant and Catering,* WL 6019218 (E.D. Pa. 2011)(Goldberg, J.)(Party's failure to maintain witness statements as part of investigation for litigation requires adverse inference to be given as jury instruction); *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.,* 348 F.Supp.2d 332 (D.N.J. 2004)(Failure to maintain e-mails bearing on facts in case warranted adverse inference instruction); *N.V.E., Inc. v. Palmeroni,* WL 4407428 (D.N.J. 2011)(failure to preserve e-mails and accounting documents that should have been known would be the subject of litigation constitutes spoliation and warranted an adverse inference jury instruction as a sanction in this case); *U.S. v. Suarez,* WL 4226524 (D.N.J. 2010)(Failure to Preserve text messages warranted adverse inference jury instruction); *Indemnity Ins. Co. of North America v. Electrolux Home Products, Inc.,* WL 6099362 (E.D. Pa. 2011)(Surrick, J.)(Party's

failure to preserve 1 of many items of physical evidence in product liability claim warranted adverse inference jury instruction).

### III.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this court grant the instant Motion and submit to the jury an adverse inference / spoliation jury instruction.


Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s Ari R. Karpf*
Ari R. Karpf
Amy Y. Karpf

Dated: May 11, 2012

14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIESHA TABON :<br><br>        Plaintiff, :<br><br>   v. :<br><br>UNIVERSITY OF PENNSYLVANIA :<br>HEALTH SYSTEM :<br>     and :<br>PRESBYTERIAN MEDICAL CENTER OF :<br>THE UNIVERSITY OF PENNSYLVANIA :<br>HEALTH SYSTEM, d/b/a PENN :<br>PRESBYTERIAN MEDICAL CENTER :<br><br>      Defendants. :| CIVIL ACTION<br><br>No. 10-2781 |

## CERTIFICATE OF SERVICE

    I, Ari R. Karpf, do hereby certify that on the date set forth below, I caused to be served a true and correct copy of Plaintiff's *Motion for Spoliation Instruction* by electronic filing upon the following individuals:

Mr. Todd A. Ewan, Esq.
Fisher & Phillips
Radnor Financial Center
201 King of Prussia Road
Radnor, PA 19087

*/s/ Ari R. Karpf*
Ari R. Karpf
Amy Y. Karpf

Dated: May 11, 2012