IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIESHA TABON, : | |
|     Plaintiff, : | |
| v. : | No.: 10-cv-2781 |
| : | |
| UNIVERSITY OF PENNSYLVANIA : | |
| HEALTH SYSTEM and PRESBYTERIAN : | |
| MEDICAL CENTER OF THE UNIVERSITY : | |
| OF PENNSYLVANIA HEALTH SYSTEM, : | |
|     Defendants. : | |

**MEMORANDUM AND ORDER**

**LYNNE A. SITARSKI**                                                                                              July 20, 2012
**UNITED STATES MAGISTRATE JUDGE**

      Currently pending before the Court is Plaintiff's Motion for Sanctions for Spoliation (Doc. No. 57), Opposition of Defendants University of Pennsylvania Health System and Presbyterian Medical Center of The University of Pennsylvania Health System d/b/a Penn Presbyterian Medical Center to Plaintiff's Motion for Sanctions for Spoliation (Doc. No. 71), and Plaintiff's Reply to Defendants' Memorandum Opposing an Adverse Jury Instruction for Spoliation (Doc. No. 76).  Plaintiff seeks an adverse inference jury instruction as a remedy for three alleged incidents of spoliation (i.e., for Defendants' failure to produce an investigation file, original medical documents, and computer printouts of comment sections during discovery).  As more fully set forth herein, Plaintiff's Motion for Sanctions is **DENIED**.

**I.    FACTS AND PROCEDURAL HISTORY**

      The underlying action concerns alleged employment discrimination against Plaintiff Tiesha Tabon ("Plaintiff") by her former employer, Defendants University of Pennsylvania Health System and Presbyterian Medical Center of The University of Pennsylvania d/b/a Penn

Presbyterian Medical Center ("Defendants").  Plaintiff worked as a nurse at the Defendant hospital, with Ms. Chaudron Carter serving as her immediate supervisor.  On September 23, 2009, Plaintiff was terminated by Defendants for falsifying documentation (as concerning patient Ms. W) and for failing to follow a doctor's order (as concerning patient Ms. McN).  Defendants' decision to terminate Plaintiff was based upon an investigation conducted by Ms. Carter during which Ms. Carter interviewed employees, obtained statements, and took notes of her findings.  *See* Carter Dep. 80-81, 83-84, Sept. 28, 2011.

Upon being terminated, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge on November 5, 2009.  On June 10, 2010, Plaintiff initiated this lawsuit against Defendants, asserting violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000(e) *et seq*.

During discovery, Plaintiff requested certain pieces of evidence that are the subject of the instant motion.  First, Plaintiff requested the investigation file created by Ms. Carter.  Defs.' Opp'n 4.  However, Defendants did not produce it.  Ms. Carter testified that she disposed of her investigation notes (as was her practice), and that she turned over the statements to Ms. Kia Logan (the Human Resources Manager).  *See* Carter Dep. 83-85.  Ms. Logan testified that, although she does not recall receiving the statements, she forwarded any documents she received to Defendants' document management company before litigation had commenced.  *See* Logan Dep. 18, 23-26, Jan. 25, 2012.  Ms. Logan also stated that files are sent to the document management company weekly, where electronic copies are maintained, and original documents are destroyed after 90 days.  *Id.* at 25-26.  Ultimately, Defendants assert that they did not produce

2

the requested investigation file in original or electronic form because it has been lost or misplaced.  Defs.' Opp'n 8.  Defendants also assert that they did not produce Ms. Carter's notes because Ms. Carter disposed of them in the ordinary course, and no duty to preserve existed at the time Ms. Carter disposed of them.  *Id.* at 9.

The second piece of evidence at issue in this motion are the medical records of patient Ms. McN.  Plaintiff asked to review the medical records of Ms. McN.  Pl.'s Mem. Law Supp. Mot. 7.  Although Defendants produced a copy of the records, Plaintiff's counsel sought to inspect the original paper medical records.  *Id.*  In a series of e-mails, Defendants agreed to allow Plaintiff to review the paper records.  *Id.* at 7-8.  However, Defendants canceled the in-person inspection because the paper records had been destroyed, in accordance with Defendants' policy.[1]

Finally, Plaintiff alleges that she requested printouts of comment sections for two patients (Ms. McN and Ms. W) contained within Defendants' "Sunrise" computer system.  Pl.'s Mem. Law. Supp. Mot. 8.  In opposition, Defendants assert that they did not produce the comments because Plaintiff never identified the specific computer entries for which she sought comment sections.  Defs.' Opp'n 12.  Plaintiff counters that she requested all Sunrise documents for Ms. McN and Ms. W, and in fact a letter was sent to this Court requesting a conference to address Defendants' failure to produce certain discovery, including these Sunrise reports.  Pl.'s Reply, Ex. A at 3.

On May 11, 2012, Plaintiff filed the instant motion for sanctions based on these three alleged incidents of spoliation.  Plaintiff contends that an adverse inference jury instruction is

---

[1] In the fall of 2009, paper medical records were scanned into an electronic database within 24 hours of a patient's discharge.  Defs.' Opp'n 10.  The paper records were then sent to a third-party storage facility, which disposed of the records after 12-16 months.  *Id.*

warranted because Defendants failed to preserve the relevant documents after the EEOC charge was filed.  In response, Defendants assert that any sanctions are inappropriate because their failure to produce these documents did not involve bad faith or intentional destruction.  Rather, Defendants argue, the documents are not available as a result of routine document destruction policies.

      This matter is now ripe for disposition.

## II.    LEGAL STANDARDS

      "Spoliation [of evidence] occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party.  *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (*citing Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)).  "[A] finding of bad faith is pivotal to a spoliation determination." *Id.* at 79.  "[T]he burden of proof on a spoliation claim lies with the party asserting that spoliation of evidence has taken place." *Williams v. Klem*, No. 07-1044, 2010 WL 3812350, at *2 (M.D. Pa. Sept. 22, 2010) (*citing Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-08 (3d Cir. 2001)).  "'A party that reasonably anticipates ensuing litigation has an affirmative duty to preserve evidence that may be relevant.'" *AMG Nat'l Trust Bank v. Ries*, No. 06-4337, 2011 WL 3099629, at *4 (E.D. Pa. July 22, 2011) (*quoting Travelers Prop. Cas. Co. v. Cooper Crouse-Hinds, LLC*, No. 05-6399, 2007 WL 2571450, at *4 (E.D. Pa. Aug. 31, 2007)).  In employment discrimination cases, a duty to preserve arises when the defendant receives notice of an EEOC charge.  *Chirdo v. Minerals Techs., Inc.*, No. 06-5523,

2009 WL 2195135, at *3 (E.D. Pa. July 23, 2009).

Upon a showing of spoliation, the court must determine whether sanctions are appropriate by considering:

> "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."

*Bull*, 665 F.3d at 74 (*quoting Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). Potential sanctions include: "dismissal of a claim or the entry of judgment in favor of a prejudiced party; the suppression of evidence; an adverse evidentiary inference, such as the 'spoliation inference'; fines; and attorney fees and costs." *Id.* at *4 (*citing Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110-11 (E.D. Pa. 2005)). However, "'[t]here is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court.'" *AMG*, 2011 WL 3099629, at *4 (*quoting Paramount*, 234 F.R.D. at 111).

"The spoliation inference permits a fact finder to infer that the 'destroyed evidence might or would have been unfavorable to the position of the offending party.'" *Paramount*, 234 F.R.D. at 112. A spoliation inference is inappropriate when the circumstances indicate the evidence has been lost or accidently destroyed. *Bull*, 665 F.3d at 79 (*citing Brewer*, 72 F.3d at 334).

### III. DISCUSSION

Plaintiff seeks an adverse inference/spoliation jury instruction for three alleged incidents

of spoliation. Plaintiff also argues that Defendants acted with malice as evidenced by their refusal to produce Plaintiff's FMLA request forms. Pl.'s Mem. Law Supp. Mot. 9. However, Plaintiff does not seek an adverse inference instruction for this matter. *Id.* at 9 n.3. This Court will address each alleged incident of spoliation separately.

### A. The Investigation File

Plaintiff first argues that spoliation sanctions are warranted for Defendants' failure to produce an investigation file pertaining to incidents of alleged documentation errors by Plaintiff. *Id.* at 4. As already noted, one of Defendants' asserted reasons for Plaintiff's termination was Plaintiff's falsification of medical records. Plaintiff contends that none of the statements or notes from the investigation file relating to this incident were produced during discovery. *Id.* Plaintiff further alleges that the statements would have supported Plaintiff's theories for recovery, based upon two statements that witnesses voluntarily produced during discovery. *Id.* at 6. In response, Defendants contend that they had produced all requested documents in their possession, custody, or control, and that there is no evidence that the investigation file was intentionally withheld or destroyed. Defs.' Opp'n 4, 8. Defendants also state that no duty to preserve existed when Ms. Carter threw away her notes at the conclusion of the investigation. *Id.* at 9. Plaintiff replies that Defendants should have placed a "litigation hold" on relevant documents. Pl.'s Reply 5.

In applying the elements of the *Bull/Brewer* test for spoliation, the investigation file was in Defendants' control when Ms. Carter turned over the file to the Human Resources Manager (Ms. Logan). Also, the investigation file is relevant as it contains notes and statements regarding incidents of alleged documentation errors by Plaintiff, which would evidence the process that led to Plaintiff's termination. The duty to preserve the file arose when Defendants received notice

that Plaintiff filed an EEOC charge on November 5, 2009. *See Chirdo*, 2009 WL 2195135, at *3 (denying a motion for a spoliation charge where relevant evidence was destroyed before defendants had notice of an EEOC charge). However, there is no evidence that Defendants acted with bad faith in failing to produce the file because there is no suggestion that the file was lost or destroyed after the duty to preserve arose. *See Bull*, 665 F.3d at 79 (finding that a party's withholding of evidence must have been done intentionally to conclude that spoliation occurred). Moreover, Ms. Carter destroyed her notes in accordance with her ordinary practice, and there is no evidence that Defendants hid or destroyed the file as a litigation tactic. *See id.* (*citing Brewer*, 72 F.3d at 334) (noting that a spoliation inference "'does not arise where the destruction was a matter of routine with no fraudulent intent'"). Thus, there is insufficient evidence to find that spoliation in fact occurred with respect to the investigation file.

>   B.  **Ms. McN's Original Medical Records**

Plaintiff next argues that an adverse inference instruction is warranted based upon Defendants' failure to produce Ms. McN's original medical records. Pl.'s Mem. Law Supp. Mot. 7. Plaintiff asserts that she made an entry in the records about changing the tube feeding order.[2] Pl.'s Dep. 124, Jan. 30, 2012. Plaintiff received a copy of Ms. McN's medical records in discovery, but questioned the copy's authenticity. Specifically, Plaintiff alleged that Defendants had erased her notation that 40 cc's of tube feeding were provided.[3] *Id.* at 125. In response, Defendants argue that there is no evidence that the original records were improperly destroyed or

---

[2] Plaintiff had been ordered to increase Ms. McN's tube feeding by 10 cc's per hour. Defs.' Opp'n 11 n.5.

[3] Plaintiff asserts that a notation of "40" was erased under the amount absorbed column of Ms. McN's tube feeding flow sheet.

lost (i.e., Defendants do not possess the requisite intent).  Defs.' Opp'n 10.  Also, Defendants argue that they were not provided with notice that the original paper medical records would be relevant because authenticity was not challenged until approximately four months after production.  *Id.* at 10-11.  Plaintiff replies that Defendants should have suspended any document retention/destruction policy and placed a "litigation hold" on relevant documents once the EEOC charge was filed.  Pl.'s Reply 6.

In *Bull*, the Third Circuit reversed a district court's decision to declare a mistrial and dismiss a "state-law employment discrimination case as a sanction for failing to produce originals of certain medical notes requested by [the defendant]."  *See Bull*, 665 F.3d at 70.  The Third Circuit opined that "producing copies in instances where the originals have been requested **may** constitute spoliation if it would prevent discovering critical information."  *Id.* at 73 (emphasis added).  However, the Third Circuit held that spoliation did not occur because there was no evidence that the plaintiff intentionally withheld the original notes.  *See id.* at 74-77. In so holding, the Third Circuit considered when and how often the originals were requested as well as whether the non-producing party lied or obfuscated to prevail in her attempt to intentionally withhold the originals.  *See id.*

In the instant case, this Court rejects Plaintiff's argument that Defendants breached their duty to preserve the records pursuant to state law.  Pennsylvania law requires that medical providers/health care facilities retain medical records "for at least 7 years from the date of the last medical service for which a medical record entry is required."  49 Pa. Code § 16.95(e).  The records may be "original, reproductions, or microfilm."  28 Pa. Code § 115.23(a).  Defendants preserved the medical records in electronic form, which is in accordance with the statute.  *See id.*;

*see also Bull*, 665 F.3d at 78 n.12 (noting that "the concept of an 'original' document is becoming more abstract" and that it is becoming "increasingly difficult to ascertain where the boundary of an objectively reasonable duty to preserve [source] documents lies").

Also, this Court finds that Defendants did not engage in spoliation of Ms. McN's original medical records. Despite the fact that Ms. MsN's original medical records were (at one time) in Defendants' control and may be potentially relevant, no evidence of bad faith on the part of Defendants exists. *See Bull*, 665 F.3d at 79 (a finding of bad faith is "pivotal" to spoliation). On September 26, 2011, Plaintiff's counsel requested the original medical records of Ms. McN in an email for the stated reason that the copies produced are "extremely hard to read." *See* Pl.'s Mot., Ex. G. This was the first time that Plaintiff specifically requested inspection of the original documents. However, the originals had already been destroyed (on January 6, 2011). *See* Defs.' Resp., Ex. B. Defendants disposed of the paper records in accordance with routine medical record retention protocol. *See id.* As noted above, a spoliation inference "'does not arise where the destruction was a matter of routine with no fraudulent intent.'" *Bull*, 665 F.3d at 79 (*citing Brewer*, 72 F.3d at 334); *see also United States v. Nelson*, No. 11-3789, 2012 WL 2019166, at *2 (3d Cir. June 6, 2012) (finding no evidence that tapes were destroyed to prevent another party's use of them where prison policy was to recycle tapes). None of the evidence suggests fraudulent intent. Thus, there is insufficient evidence to impose a sanction for alleged spoliation with respect to the medical records.

    **C.    Comment Sections in Defendants' Computer System**

Third, Plaintiff argues that spoliation sanctions are warranted for Defendants' failure to produce the comment sections of the medical records in Defendants' computer system. Pl.'s

Mem. Law Supp. Mot. 8. Defendants' contend they terminated Plaintiff for: (1) falsifying a medical record during her treatment of Ms. W; and (2) failing to follow a doctor's order during her treatment of Ms. McN. Plaintiff contends that she documented information for these two patients in the comment section in Defendants' Sunrise Computer System. Pl.'s Dep. 131. Plaintiff alleges that Defendants failed to produce this information despite numerous requests during discovery. Pl.'s Mem. Law Supp. Mot. 9. In response, Defendants contend that spoliation sanctions are unwarranted because Plaintiff failed to identify the specific entries being sought. Defs.' Opp'n 12. Plaintiff replies that she requested all Sunrise documents for the two patients during her first document request in November 2010, and that she sought these documents for over a year. Pl.'s Reply 7. Plaintiff further asserts that she was never asked to specify which entries were sought.[4] *Id.* at 7.

The Sunrise comment sections were in Defendants' control because they were contained in Defendants' computer system. The comments are relevant for revealing Plaintiff's treatment of Ms. W and Ms. McN, as Defendants contend that they terminated Plaintiff for her misconduct with respect to these patients.[5] However, there is insufficient evidence to find that Defendants

---

[4] Plaintiff's counsel also contends she was told that Sunrise reports were included in the responses to Plaintiff's request for production of documents. *Id*. at 8. Specifically, Plaintiff asserts that Defendants represented Okami Exhibit 1 as a Sunrise report. *Id.* However, Ms. Rema Dicen (a registered nurse) stated during a deposition that Okami Exhibit 1 was not a Sunrise report. Dicen Dep. 141, Sept. 29, 2011.

[5] Although not explicitly argued by Plaintiff in the instant motion, the comments concerning Ms. W are potentially relevant to whether Plaintiff falsified the records because they may contain further documentation or explanations by Plaintiff. As to the comments concerning Ms. McN, this discovery is also potentially relevant because they may reveal whether Plaintiff treated Ms. McN as per the doctor's orders, or note the alleged conversation with a doctor who agreed to change the order.

acted with bad faith by withholding the comment sections. In requesting the comment sections, Plaintiff was required to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Although it seems that Plaintiff met this requirement by requesting all Sunrise documents pertaining to Ms. W and Ms. McN in November 2010, Defendants may have reasonably believed that Plaintiff's request did not satisfy discovery requirements by not specifying which entries were sought. There is no evidence that Defendants willfully withheld the comments, or that they acted in bad faith. Thus, there is insufficient evidence of spoliation with respect to the comment sections.

> D. **FMLA Request Forms**

Finally, Plaintiff contends that Defendants' failure to produce the FMLA request forms evidences malice. Pl.'s Mem. Law Supp. Mot. 9. However, Plaintiff does not seek a spoliation sanction concerning this alleged discovery violation. *Id.* at 9 n.3. Plaintiff contends that Defendants' First Interrogatory Response asserted that Plaintiff never requested medical leave. *Id.* at 9. Plaintiff argues that Defendants amended the Interrogatory Response to say that Plaintiff only requested medical leave after learning she might be terminated. *Id.* In response, Defendants contend that Plaintiff's medical leave request form was not in their possession, custody, or control when they responded to Plaintiff's First Set of Interrogatories. Defs.' Opp'n 12. Defendants state that Plaintiff produced a medical leave request form with her response to Defendants' discovery requests. *Id.* at 13. Defendants also note that they accordingly amended their response to state, "Plaintiff did not request leave for her pregnancy until after it was determined that her employment would be terminated based on her violations of Penn's policies and procedures." *Id.* Plaintiff replies that Defendants' contention in their First Interrogatory

11

Response that Plaintiff did not request a leave of absence is false.  Pl.'s Reply 11.

Upon review, Plaintiff states that she is not seeking an adverse inference instruction for the failure to produce the FMLA request forms.  Therefore, no decision is required for this alleged discovery violation.  As to whether Defendants' failure to produce the FMLA forms demonstrates malice or bad faith as to the other documents, this Court does not find a connection, and Plaintiff has not articulated any such connection.  Accordingly, this Court rejects any argument that Defendants acted with the requisite intent.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Sanctions is **DENIED**.  An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE